Steven C. THOMAS, Beth S. Andryk, Donald Gnewikow, James Blochowiak, Paul Lesnick, Brent McFarland, John Winters, Jeffrey Rassmussen, Jerald Bouwen, Debra Schellinger, Timothy Hazelton, Patrick J. Kelly, Steven J. Patterson, James Hanke, Barbara Hanke, Roger Raygo, Peter Papia, Individually and on behalf of all persons similarly situated, Plaintiffs,

v.

Ronald FIEDLER, Secretary of the Wisconsin Department of Transportation, and Joseph Sweda, Wisconsin Commissioner of Transportation, in their individual and official capacities, Defendants.

No. 88–C–506.

United States District Court, E.D. Wisconsin.

Dec. 6, 1988.

William A. Pangman, Law Offices of William A. Pangman and Associates, Waukesha, Wis., for plaintiffs.

Charles D. Hoornstra, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants.

## DECISION AND ORDER

STADTMUELLER, District Judge.

Plaintiffs instituted this lawsuit on May 12, 1988, as a class action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, alleging that defendants have violated their constitutional rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Defendants, Ronald Feidler and Joseph Sweda, (hereinafter either "defendants" or "state") are respectively, the Secretary of the Wisconsin Department of Transportation and Wisconsin Commisioner of Transportation, and are sued in both their individual and official capacities. On May 31, 1988 plaintiffs filed their first amended complaint, a motion for a preliminary injunction pursuant to Fed.R. Civ.P. 65, and a motion for class certification pursuant to Fed.R.Civ.P. 23. Defendants filed a motion to dismiss on June 2, 1988. A hearing on the preliminary injunction was held on July 1, 1988. A decision on the class certification issue was held in abeyance until determination of the preliminary injunction motion. The motions have been fully briefed and are now ready for resolution. For the reasons which follow, defendants' motion to dismiss will be denied. Plaintiffs' motions for preliminary injunction and for class certification will be granted.

## I. FACTS

Plaintiffs are challenging the constitutionality of Wis.Stat. § 343.305 (1985–86), as amended, 1987 Wis. Act 3, § 29 (effective January 1, 1988) (hereinafter cited Wis. Stat. § 343.305), and Wis.Admin.Code, Chap.Trans. 113, which interprets the amended statute. Prior to January 1, 1988, Wis.Stat. § 343.305 was the "implied consent law" of Wisconsin which provided for immediate suspension of a drivers license when a driver refused to take a blood alcohol test upon request of a law enforcement officer. The amendment, described more fully below, incorporates and amends the prior law and also adds an administrative procedure for suspension of a drivers license if the driver takes a blood alcohol test and fails. Failure of the test results when the driver's blood alcohol content (BAC) is 0.1% or more.

### A. The Statute and the Regulation

The statute, Wis.Stat. § 343.305, states in pertinent part:

\* \* \* \* \* \*

(7) *Chemical test; administrative suspension.* If a person submits to chemical testing administered in accordance with this section and any test results indicate a blood alcohol concentration of 0.1% or more, the law enforcement officer shall report the results to the department and take possession of the person's license and forward it to the department. The person's operating privilege is administratively suspended for 6 months.

(8) *Chemical test; administrative suspension; administrative and judicial review.* (a) The law enforcement officer shall notify the person of the administrative suspension under sub. (7). The notice shall advise the person that his or her operating privilege will be administratively suspended and that he or she has the right to obtain administrative and judicial review under this subsection. The notice shall include a form for the person to use to request administrative review under this subsection. This notice of administrative suspension serves as a 30–day temporary license. An administrative suspension under sub. (7) becomes effective at the time the 30–day temporary license expires. The officer shall submit or mail a copy of the notice to the department.

(b)1 Within 10 days after the notification under par. (a), the person may request, in writing, that the department review the administrative suspension.

The review procedure is not subject to ch. 227.... The department or the office of the commissioner of transportation, respectively, shall hold a hearing regarding the administrative suspension within 30 days after the date of notification under par. (a). The person may present evidence and may be represented by counsel. The arresting officer need not appear, but the hearing officer must have a copy of the officer's report and the results of the chemical test.

2. The administrative hearing under this paragraph is limited to the following issues:

a. The correct identity of the person.

b. Whether the person was informed of the options regarding tests under this section as required under sub. (4).

bm. Whether the person had a blood alcohol concentration of 0.1% or more at the time the offense allegedly occurred.

c. Whether one or more tests were administered in accordance with this section.

d. If one or more tests were administered in accordance with this section, whether each of the test results for those tests indicate the person had a blood alcohol concentration of 0.1% or more.

e. Whether probable cause existed for the arrest.

3. If the hearing examiner finds that the criteria for administrative suspension have not been satisfied or that the person did not have a blood alcohol concentration of 0.1% or more at the time the offense allegedly occurred, the examiner shall order that the administrative suspension of the persons' operating privilege be rescinded without payment of the fee under s. 343.21(1)(j). If the hearing examiner finds that the criteria for administrative suspension have been satisfied and that the person had a blood alcohol concentration of 0.1% or more at the time the offense allegedly occurred, the administrative suspension shall continue.

(c)1. An individual aggrieved by the determination of the hearing examiner may have the determination reviewed by the court hearing the action relating to the applicable violation listed under sub. (3)(a) or by a court commissioner authorized to review the determination as provided in s. 757.69(1m). If the review is by the court and the person submits a petition for prompt review, the court shall conduct the review as expeditiously as possible to minimize the impact upon the individual of any delay. If the individual does not submit a petition for prompt review, the court shall conduct the review in conjunction with the trial or sentencing for the action. If the review is by a court commissioner and the person submits a petition for prompt review, the court commissioner shall conduct the review as expeditiously as possible. The judicial review is limited to the issues specified in par. (b)2.

2. The court or court commissioner shall order that the administrative suspension be either rescinded or sustained. The court or court commissioner shall file its order with the department within 14 days after the hearing.

3. Any party aggrieved by the order of a circuit court or a court commissioner under subd. 2 may appeal to the court of appeals. Any party aggrieved by the order of a municipal court under subd. 2 may appeal to the circuit court for the county where the offense allegedly occurred.

4. A request for judicial review under this subsection does not stay any administrative suspension order.

5. If any court or court commissioner orders under this subsection that the administrative suspension of the person's operating privilege be rescinded, the person need not pay the fee under s. 343.-21(1)(j).

(d) A person who has his or her operating privilege administratively suspended under this subsection is eligible for an occupational license under s. 343.10 at any time.

(e) If the operating privilege of a person licensed as a chauffeur is administratively suspended under this subsection and the person was not driving or operating a vehicle as a chauffeur at the time

of violation, his or her chauffeur's license shall not be administratively suspended under this subsection.[1]

Wis.Stat.Ann. § 343.305(7) and (8) (1988 Supp.)

This statute is interpreted in Wisconsin Administrative Code Ch.Trans. 113. The regulation, as promulgated by the Department of Transportation, provides that the arresting officer need not appear at the administrative review nor may the officer be subpoenaed to compel his or her presence. The review will be conducted within the 30–day period after the date of the notice of intent to suspend. The regulation tracks the statute on the issues which are reviewable at the administrative hearing. The regulation further provides that the examiner must find to a reasonable certainty by clear, satisfactory, and convincing evidence that the criteria of § 343.305(8)(b) have been satisfied. If not, the administrative suspension should be vacated. Subsection (10) informs examiners that the result of an individual review will not be considered in any personnel action involving the examiner or in a performance review of the examiner by the department or the Office of the Commissioner of Transportation. Ch.Trans. 113.05 states that suspensions shall take effect at 12:01 A.M. on the 31st day after the date the notice of intent to suspend unless the examiner notifies the department that the criteria for administrative suspension have not been met. In a note to the regulation, the department indicates that if a person petitions for judicial review of the suspension, the court may treat the petition in the same manner as a request for a speedy trial. The review may be held at the time of trial of the underlying offense. The judicial review is to be a *de novo* review of the issues raised in the petition. And finally, in order to sustain a suspension the court must find that there is clear, satisfactory and convincing evidence to satisfy each of the issues identified in Wis.Stat. § 343.305(8)(b)(2).

1. Subpart (8)(e) was created by 1987 Wis.Act 399, § 443(a) effective May 1, 1988. It was not included in the original legislation.

## B. Testimony and Exhibits

At the hearing on plaintiffs' motion for a preliminary injunction, testimony was given by Mr. Jerry Hancock, Assistant General Counsel for the Department of Transportation, regarding the operation of this statute. In the six-month time period from January 1, 1988 through May 31, 1988, a total of 9,060 notices of intent to suspend were received by the department. Of that number, 1,262 administrative reviews were requested. 1,120 reviews (including no-shows and cancellations) were actually held. The administrative suspensions were vacated in 199 cases prior to the review, and 82 cases as a result of the review. Of the 1,262 requested administrative reviews a total of 281 suspensions or 22.3% were vacated as a consequence of the administrative review process, while an additional 86 cases or 6.8% of the total were vacated upon court review. Thus, the number of suspensions vacated by the courts represent less than 1% of the total suspensions during the first five months of 1988. Mr. Hancock was unable to provide any information during his testimony concerning the number of cases in which judicial review had been requested or held.

Other evidence was also presented to the court both prior to and during the preliminary injunction hearing. This evidence took the form of affidavits, exhibits and testimony from witnesses. At the hearing, the state's counsel agreed that any uncontested facts of the complaint could be taken as true.

At the administrative hearing, the driver may be represented by counsel and present evidence. Mr. Hancock testified that it was the department's position that hearing examiners were to consider all the evidence presented at the hearing, whether from the reports submitted by law enforcement or evidence from the driver. However, James E. Konen, a hearing examiner for the Department of Transportation, testified that, based on his training, he was to accept evidence pertaining to any of the six sub-

jects for review from the driver, but then take as true the statements contained in the arrest reports submitted. These reports are not required to be sworn to or certified, nor are they witnessed by any officer other than the officer making the report. They are not uniform throughout the state as each law enforcement agency uses its own style of report form.

Attorney Barry S. Cohen also testified at the hearing regarding his experience with the statute and his representation of drivers whose licenses were administratively suspended, including some of the plaintiffs. Various plaintiffs have attempted, without success, to subpoena both the arresting officer and the intoxilizer operator. The statute itself provides that the arresting officer need not appear. The regulation, however, states that the arresting officer cannot be subpoenaed. The department has also informed county sheriff's departments not to serve subpoenas on intoxilizer operators. At the hearing, Mr. Hancock testified that it was now his opinion (and that of the department) that this latter position is wrong and the intoxlizer operator may be subpoenaed to testify at the hearing.

Persons aggrieved by the hearing procedure may petition for prompt judicial review, which is to be held "as expeditiously as possible." Mr. Hancock testified that it was originally contemplated that this judicial review would be conducted in conjunction with the trial of the underlying drunk driving charge. The regulation provides that a request for prompt judicial review should be treated as a request for a speedy trial. However, evidence presented shows that, in fact, some plaintiffs have not received the requested judicial review within the duration of the suspension. Insofar as judicial review is concerned, some judges are providing a *de novo* hearing, while others provide only a paper review of the administrative hearing.[2]

One of plaintiffs' challenges relates to their inability to challenge the constitutionality of the statute either during the hearing or during the review. The state has submitted a copy of a written decision in the case of *City of Sheboygan v. Warden,* Case Nos. 88–TR–395 & 88–TR–396. In that case, Warden petitioned for prompt judicial review and a stay pending that review. He also challenged the constitutionality of the statute. Circuit Judge Anderson went to great lengths discussing the constitutional challenge, ultimately finding the statute constitutional on the grounds that the administrative hearing provided an adequate predeprivation hearing. He then denied the request for prompt judicial review and stay of the administrative suspension order, without providing the review requested. The request was filed on February 24, 1988. Judge Anderson's decision upholding the statute but denying the request for prompt judicial review was not issued until July 1, 1988, four (4) months and four (4) days after the review was requested and more than four (4) months after Warden's suspension went into effect. There is no mention in the decision of when Warden would get the "prompt judicial review" he requested and which the statute requires be granted as expeditiously as possible.

Plaintiffs submitted a copy of the transcript in the case of *City of West Allis v. Beth Andryk,* Case Nos. 1–881303, 1–881304 and 1–881407 to refute the state's position, as evidenced by the Sheboygan case, that plaintiffs can challenge the constitutionality of the statute. The transcript displays the problems associated with the judicial review procedure. The judge was ready to address Andryk's constitutional challenge, review her suspension, and hold a jury trial on the drunk driving charge. The jury trial was adjourned at the request of the City Attorney. The suspension was vacated as a result of the judge having no record to review, and in fact neither the

---

**2.** Since no record is kept of the proceedings at the administrative level, the judge apparently reviews the documents which were before the hearing examiner. From the testimony and exhibits submitted by the parties, it is unclear exactly what judges do when they conduct a "paper" review of the suspension hearing. It is also unclear whether judges are allowing testimony at *de novo* reviews.

judge, the city attorney, nor the assistant attorney general on hand to address the constitutional challenge could determine what type of review was to be afforded, who was responsible for providing the record, or when the review should be afforded. In fact, both the city attorney and the assistant attorney general recommended that the judge delay the review to allow time to procure the record. This delay was suggested despite the suspension occurring in April and the hearing held on July 27, 1988. Since the suspension was vacated for lack of a record to review, the constitutional challenge was treated as moot.

It appears from the complaint and from affidavits submitted that some judges refuse to hear any constitutional challenge to the statute because the statute limits the review to the six issues listed in § 343.305(b). These judges then review the records before them to determine whether the suspension should continue. Notably, the different procedures with which the various plaintiffs have been confronted vary from county to county, and depend primarily on where the individual plaintiff received the drunk driving citation.

The request for prompt judicial review does not automatically stay the suspension. A driver may petition the court for a stay, and in some instances this procedure has been effective. However, the judicial officer is not required to grant the stay, just as the judicial officer is not required to treat the request for prompt judicial review as a request for a speedy trial. The state has submitted the affidavit of J. Dennis Moran, Director of the State Courts of Wisconsin. He states that at a meeting with the Chief Circuit Court Judges, they agreed to try to implement a system for treating all requests for prompt judicial review as requests for a speedy trial. This is not a mandatory procedure and there is no indication of when such a procedure will be implemented.

At the hearing before this court on July 1, 1988, Mr. Hancock testified that to impose a requirement that the arrest reports be sworn would add little cost to the state. He also stated that the state could easily provide immunity for any testimony given at the hearing by the driver so that this testimony could not be used at the trial of the underlying offense. Allowing the arresting officer and/or the intoxilizer operator to be subpoenaed (neither of which is prohibited by statute) would add some cost in overtime for officers, although no specific figures were presented to the court. Mr. Hancock also testified that it was completely within the judges discretion to issue a stay if requested. Plaintiffs, however, have submitted evidence that some judges read the statute to preclude stays pending review. Mr. Hancock admits this is a misreading of the statute and this could be corrected by amending the statute. Amendment of either the statute or the regulation would take time to make it through the legislative process. Mr. Hancock testified it could take considerable time.

There are two other provisions of the Wisconsin statutes which I find noteworthy, but which neither party addressed. The administrative suspension is for a period of six months. If a driver is convicted of a first offense drunk driving in violation of Wis.Stat. § 346.63, he/she is subject to a forfeiture of not less than $150.00 nor more than $300.00, Wis.Stat. § 346.65(2)(a), and subject to suspension for a period of not less than six (6) months nor more than nine (9) months, Wis.Stat. § 343.30(1q)(b). The suspension under § 343.305 reduces the length of the court ordered suspension. If the driver is ultimately acquitted on the drunk driving charge, the administrative suspension is vacated. However, the driver has already suffered the penalty of suspension which is substantially the same as the penalty for conviction of the underlying charge.

Another portion of Wis.Stat. § 343.305 provides for revocation of a person's license in the event the individual refuses to take a blood alcohol test. The revocation is for a period of one year (subject to other prior refusals or convictions under § 346.43), and the person is eligible for an occupational license after thirty (30) days.

The driver is entitled to a judicial hearing *prior* to revocation. In other words, the penalty for refusing to take the BAC test is stayed pending a judicial hearing. The hearing is held before the court with jurisdiction over the underlying offense.[3]

## II. ANALYSIS

Defendants have moved to dismiss the complaint arguing that the court should abstain from exercising its jurisdiction on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), as well as contending that plaintiffs' complaint fails to state a claim upon which relief may be granted.

■ As a preliminary matter, defendants' motion to dismiss also raised the issue of the eleventh amendment barring this action against the defendants in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The case was filed against the two defendants in both their individual and official capacities. The eleventh amendment issue was not further addressed in defendants' brief. The eleventh amendment and the doctrine of sovereign immunity operate to bar an action to recover monetary damages from the state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Since plaintiffs have requested only equitable relief in the form of an injunction and declaratory judgment, without monetary damages, the eleventh amendment does not present a viable defense to this lawsuit. The eleventh amendment and sovereign immunity do not "bar suit in federal court against the state official, acting in his official capacity, where the suit is for injunctive relief." *Sierra Club v. U.S. Corps of Engineers,* 590 F.Supp. 1509, 1526 (S.D.N.Y.1984).

Defendants concede that the doctrine of mootness is not applicable because this case presents a situation capable of repetition yet evading review and so fits within an exception to the mootness rule. *Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). Therefore this court has the authority to address the issues raised by plaintiffs. Defendants also concede that a driver's license is a species of property protectable by the fourteenth amendment. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *See also Mackey v. Montrym,* 443 U.S. 1, 10 n. 7, 99 S.Ct. 2612, 2617 n. 7, 61 L.Ed.2d 321 (1978) (due process clause applies to a state suspension or revocation of a driver's license).

### A. Abstention

■ The Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971) held that federal courts should abstain from hearing suits to enjoin state criminal proceedings, even if those proceedings are based on an allegedly unconstitutional statute. In *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), this doctrine was extended to state civil proceedings where important state interests are involved. *Id.* at 604–605, 95 S.Ct. at 1208–1209. *See also Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). It is not clear if the doctrine applies to all state civil proceedings. *Pennzoil Company v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1527 n. 12, 95 L.Ed.2d 1 (1987). The doctrine is applicable to state administrative agency proceedings. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). However, the federal plaintiff should have a full and fair opportunity for his federal constitutional claim to be heard. *Id.,* 106 S.Ct. at 2723. The Supreme Court has stated:

> The importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play. So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad

---

**3.** The difference between suspension and revocation is that after revocation, the driver must furnish proof of financial responsibility prior to

reinstatement. Such is not required for suspensions.

faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal court should abstain.

*Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 435, 102 S.Ct. 2515, 2522–2523, 73 L.Ed.2d 116 (1982). Plaintiffs claim that the lack of an opportunity to present a constitutional defense to the administrative suspension presents the extraordinary circumstance which makes this case an exception to the application of the *Younger* doctrine.

In *Ohio Civil Rights Commission, supra,* the Supreme Court explained the history and rationale of the *Younger* doctrine.

In *Younger v. Harris,* we held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury. We justified our decision both on equitable principles and on the "more vital consideration" of the proper respect for the fundamental role of states in our federal system. Because of our concerns for comity and federalism, we thought that it was "perfectly natural for our cases to repeat time and time again that the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* [401 U.S.] at 45, 91 S.Ct. at 751 (emphasis added).

We have since recognized that our concern for comity and federalism is equally applicable to certain other pending state proceedings. We have applied the *Younger* principle to civil proceedings in which important state interests are involved. We have also applied it to state administrative proceedings in which important state interests are vindicated, *so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim.*

106 S.Ct. at 2735 (citations omitted) (emphasis added). The full and fair opportunity to present the constitutional claims does not have to exist at the administrative pro-

ceeding stage. The court should apply the *Younger* doctrine if the constitutional claims can be raised in a state court judicial review of that proceeding. *Id.* at 2724.

Defendants contend that state courts have a constitutional duty to enforce federal substantive rights. *Weyenberg Shoe Manufacturing Company v. Seidl,* 140 Wis.2d 373, 386, 410 N.W.2d 604 (Ct.App. 1987). State courts have the power to assure due process where it is required. *In Interest of DH,* 76 Wis.2d 286, 251 N.W.2d 196 (1977). Defendants also allege that the Wisconsin Supreme Court has established a *de novo* review procedure in the circuit courts where the statutory scheme is inadequate. *Hortonville Education Association v. Joint School District No. 1,* 66 Wis.2d 469, 225 N.W.2d 658 (1975), rev'd on other grounds, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Defendants contend that such state authority imposing the U.S. Constitution on any state statutory scheme allows plaintiffs a full and fair opportunity to present their constitutional claims and thus requires this court to abstain from hearing this action.

■ Defendants' brief in opposition to the preliminary injunction motion also raises abstention under *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The *Pullman* doctrine applies when a federal court is asked to rule on an issue where there are uncertain questions of state law and the state law is susceptible of a construction which will either eliminate the need for deciding the federal issue or change the way in which the court will view the issue. 312 U.S. at 499–501, 61 S.Ct. at 644–646. Plaintiffs concede that the first aspect of *Pullman* is met in this case as the state administrative suspension law is definitely unclear. However, plaintiffs argue that no construction of the statute will make the constitutional claims of the plaintiffs moot. *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). In addition, *Baggett* requires consideration of the delay associated with *Pullman* abstention and the effect of any delay on the constitutional claims of the plaintiffs. *Id.*

at 379, 84 S.Ct. at 1326. While *Baggett* dealt with first amendment challenges to the statute, the delay considerations are equally applicable when there is a due process challenge to a state statute as there is in this case. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

Plaintiffs have submitted affidavits stating that in at least two circumstances the judge reviewing the administrative suspension hearing refused to hear any constitutional challenges and limited his review to essentially a paper review of the hearing examiner's decision. That judicial review was limited specifically to the six issues addressed by the hearing examiner. Plaintiffs allege in their complaint that in other instances the judicial review is conducted on a *de novo* basis. Finally, plaintiffs allege that in some circumstances the request for prompt judicial review is not even conducted until near the end of or after the completion of the six-month administrative suspension of the license. Plaintiffs also note that the statute contains no time limit within which the judicial review of the administrative hearing must be held, that the request for judicial review does not stay the suspension, and that the review procedure is not subject to Chapter 227 of the Wisconsin Statutes. Plaintiffs also contend that this case is factually similar to *Gonzales v. Franklin County Municipal Court*, 595 F.Supp. 382 (S.D.Oh.1984).

In *Gonzales*, the court was asked to review Ohio R.C. § 4511.191(K)(1) which provided that after a defendant failed a chemical test, his license was immediately suspended. The suspension continued until the complaint "is adjudicated on the merits by the trial court or until the trial court, upon motion determines ... that there is no probable cause for arrest." The *Gonzales* court concluded that appellate review of the suspension may have allowed for constitutional defenses to be raised but held that "the matter of appellate rights concerning the pretrial suspension remains clouded." 595 F.Supp. at 386. Because the opportunity to raise constitutional defenses was questionable, the *Gonzales* court refused to abstain from hearing

plaintiff's request for a preliminary injunction.

The state, on the other hand, contends that this case is particularly appropriate for abstention. Defendants are contending in essence that state courts will remedy any problems with the statute. Defendants also cite the *Warden* case in support of their contention that constitutional review is available to plaintiffs. However, what *Warden* illustrates is that the statute is not being uniformly interpreted and enforced throughout the state. It also emphasizes the delay associated with judicial review of the suspension for the court did not rule on the merits of suspension, but only on the constitutionality of the statute. In fact, the judge denied the petition for prompt judicial review. It is also noteworthy that the decision was issued by the judge on July 1, 1988. The suspension took effect on February 16, 1988 and the petition for prompt judicial review and a stay of the suspension was filed on February 24, 1988. A delay of over four months occurred prior to a ruling on the petition. *Warden's* suspension was over two-thirds complete before his arguments were even heard by the court.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). I agree that the instant case presents those extraordinary circumstances which create an exception to the *Younger* doctrine. The administrative hearing on the suspension is statutorily limited to nonconstitutional issues. Plaintiffs have submitted allegations that the judicial review of those administrative hearings may not allow for the presentation of constitutional defenses. In other instances, a *de novo* review of the suspension is held. The statute is vague and ambiguous on the type of review available after the administrative hearing. At the same time the disparate application of the statute in various circumstances clouds the issue of whether individual plaintiffs will be able to present their constitutional claims to the state forum. For these rea-

sons I find that the extraordinary circumstances required to make this case an exception to the *Younger* extension doctrine are present. Accordingly, the court will entertain plaintiffs' request for a preliminary injunction.

I also find abstention under the *Pullman* doctrine to be inappropriate. The delay associated with several of the plaintiffs obtaining a hearing on their constitutional challenges, assuming the reviewing court will entertain such a challenge, deprives plaintiffs of the "full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Commission, supra,* 106 S.Ct. at 2723. The absence of such an opportunity, in my view, presents ample justification for this court to address plaintiffs' claims.

### B. The Constitutional Challenge

In *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) the Supreme Court stated that the only issue in cases of this type is "what process is due to protect against an erroneous deprivation of that [property] interest." *Id.* at 10, 99 S.Ct. at 2617. The Court recited the factors to be considered in an inquiry of this nature:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the governments interest, including the function involved in the fiscal and administrative burdens that the additional or substitute requirement would entail.

*Id.* quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The state's position is that the pre-deprivation hearing provided by the statute meets the requirements of due process. In the alternative, the state argues that the prompt judicial review available mitigates against any deficiency in the statute at the hearing stage.

### 1. The Hearing

█ As previously noted, the hearing is to be held within 30 days of the notice of intent to suspend. The state argues that the hearing utilized comports with due process and therefore the statute is constitutional. The hearing is held prior to the suspension. However, it is not a meaningful hearing within the meaning of the pertinent case law.

First, the law states that the arresting officer need not appear at the hearing, although the driver may present evidence and be represented by counsel. The regulation interprets this law to prohibit the driver from subpoenaing the arresting officer and/or the intoxilizer operator. The regulation, as I noted in my remarks to counsel at the hearing, flies in the face of the statute. Allowing the driver to present evidence, while at the same time denying the right to subpoena witnesses, grants a right without a method of enforcement. In fact, Mr. Hancock testified at the hearing that the department's prohibition against subpoenaing the intoxilizer operator was erroneous.

There are other problems with the hearing procedure. The documents relied on by the examiner include the unsworn report of the arresting officer. In *Mackey,* the statute required not only the sworn affidavit of the officer, but also that the refusal be witnessed by a second officer. The Court found an inherent reliability in this procedure.[4] In *Carson v. Division of Vehicles,* 237 Kan. 166, 699 P.2d 447 (1985), the Kansas Supreme Court held that the administrative suspension procedure for refusal to take a BAC test violated due process rights because the suspension was based in part on the arresting officer's conclusory affidavits. The court concluded "... that when placed in issue, the officer's affidavit, per se, is insufficient to support

---

4. Defendants correctly note that the statute in *Mackey* allowed for suspension without a hearing. However, aside from the use of sworn and witnessed affidavits, the Massachusetts statute also provided for almost immediate post-deprivation review. As will be seen in the discussion of the Wisconsin statute, the post-deprivation review is not uniformly provided at a meaningful time, if it is provided at all.

the suspension of a person's driving privileges and fails to meet the requirements of due process of law or the right of confrontation and cross-examination." 699 P.2d at 454. It should be noted that both of these cases involved only the narrow issues of refusal to take the test and probable cause. The Wisconsin statute places a greater number of issues before the examiner and the "historical facts," *Mackey*, 443 U.S. at 15, 99 S.Ct. at 2619, are not nearly as clear cut as in either of these cases.

Other cases which have upheld administrative suspensions also were faced with sworn affidavits of law enforcement officers and found little risk of erroneous deprivation. *See State v. Vezeris*, 720 P.2d 1208 (Nev.1986); *Henry v. Edmisten*, 315 N.C. 474, 340 S.E.2d 720 (1986). Wisconsin's statute does not protect against an erroneous deprivation of the driver's protected property interest.

Another problem presented in this case relates to the type of hearing which is afforded. Six statutory issues are to be reviewed. The examiner is to accept evidence on each of those issues and then to determine if the suspension should continue. Mr. Konen testified as to his training and practice in conducting a hearing. He first reviews the documents before him to be sure that such things as the officer's signature appears, that the test was conducted according to department rules (such as within three hours of arrest and after the operator observes the driver for twenty minutes). He also checks to see if the reason for probable cause is sufficient (speeding or lane deviation, for example, as opposed to seeing the driver leave a tavern or the color of the driver). Once he is satisfied as to these matters he will accept whatever testimony on the six issues the driver wishes to introduce. *He then accepts the police report as the true recitation of events and continues the suspension.* In each of the instances where Mr. Konen said he rescinded the suspension, the same result would have occurred without the presence of the driver. Such a hearing is not constitutionally sufficient.

The final problem I find significant is that the administrative hearing is limited to the six issues defined by statute. The constitutionality of the statute is not included as part of the six. This aspect is not, *by itself,* of constitutional proportions. The right to raise a constitutional challenge to a law at the pre-deprivation stage is not required by the constitution. *Ohio Civil Rights Commission,* 106 S.Ct. at 2723. The question of whether the plaintiffs do have such a right will be addressed in discussing the judicial review process.

■ Plaintiffs contend the statute violates their rights against self incrimination because they are required to testify at the hearing and their testimony can then be used against them at trial. I find this argument to be unpersuasive. Those in plaintiffs' class are not obliged to give testimony at the administrative hearing. They may refuse to avail themselves of this option. *See e.g. Heddan v. Dirkswager,* 336 N.W.2d 54, 65 (Minn.1983) (administrative suspension does not compel driver to testify at the hearing). Another mitigating factor is that under the Wisconsin law no record is kept of the hearing. Without a record it is hard to imagine that testimony being used at trial. Of course, plaintiffs also challenge the lack of a record of proceedings, as the reviewing court has only the documents presented by to the examiner to review. This problem is minimal if there is an adequate judicial review, which, as will be seen, is lacking in some instances under the statute as presently applied.

### 2. Judicial Review

■ As the above analysis shows, Wisconsin's statute as interpreted by the administrative regulation, and as applied, does not provide the due process necessary to allow the state to deprive someone of the property interest represented in an individual's drivers license. However, in *Ohio Civil Rights Commission,* the Supreme Court stated that less than a full due process hearing can be used so long as the person is granted a prompt post-deprivation hearing. An analysis of the statute shows that Wisconsin's method of providing

prompt judicial review is ambiguous at best. However, it is not this ambiguity standing alone which presents the major concern to the court. Rather, it is the application of the statute to the cases in which judicial review is requested.

Evidence in the form of testimony and affidavits, as well as the unrebutted allegations of the complaint show that the timeliness of the review, as well as the type of review afforded to plaintiffs, varies depending on the county in which the review is requested. This evidence has been submitted by both parties.

Plaintiffs have submitted affidavits stating that judges in Waukesha County provide only a paper review of the administrative hearing. No new evidence is admitted and the constitutional issues are not accepted for review. Other judges, notably in Washington County, have conducted *de novo* reviews, but did limit their review to the six issues as enumerated in the statute. Evidence is taken and, as the statistics indicate, some of the suspensions are vacated. Two of the exhibits presented at the hearing highlight the main reason for a court setting aside the administrative suspension, that being the state's failure to provide the original documentation upon which the suspension was based. Without the documents the court had nothing before it to review. The type or amount of judicial review provided varies depending upon the county, or even the individual judge.

Another problem with enforcement of this statute focuses upon the timeliness of any judicial review. The evidence in this case to date highlights the disparity in the timing of judicial review which is virtually dependent on the location where an aggrieved driver committed the offense. In Dane County, a request for prompt judicial review is treated as a request for a speedy trial, which must then be held within sixty days from the date of the offense. However, defendants submitted a copy of a decision in the *Warden* case in which the judge not only denied the request for a stay of the suspension pending review, but also denied the request for prompt judicial review. Other affidavits submitted by plaintiffs establish that some individuals have not received judicial review, notwithstanding the request for prompt review, until three or four months after the suspension has taken effect. In fact, in Milwaukee County, not one judicial review had even been scheduled as of July 1, although at least one request for prompt judicial review was filed as early as March of this year. In its application the statute is creating different classifications of persons based on the geographic area in which a person lives or in which the citation is issued. This classification bears no rational relationship to the purpose of the statute and therefore violates the Equal Protection clause of the Fourteenth Amendment.

In those few instances where plaintiffs are provided a timely review a serious question remains as to whether the judicial review provided represents a meaningful hearing sufficient to pass constitutional muster. Similarly, if the judicial review provided only amounts to a paper review with the driver having no right to present evidence there has, in effect been no meaningful hearing on the denial of a property interest. From the record presented in this case it is clear that judges and state prosecutors are unclear as to the type of review to be provided and whether law enforcement officers may be subpoenaed in connection with such judicial review. The statute is silent as to the type of review to be provided while at the same time the implementing regulation is of little additional assistance since it merely reflects that the review should be *de novo*. Judges are interpreting the statute differently and as a consequence are providing different forms of review.

### 3. The Mackey Test

Using the three prong test of *Mackey*, it is quite clear that despite the laudatory efforts of those in the public and private sector to rid our streets and highways of drunk drivers the statute in question simply does not measure up to constitutional standards. The private interest in the continued use of one's drivers license is significant. While defendants rely on the avail-

ability of an occupational license, this does not mitigate the harm. The chauffeurs license is available immediately but may be used for only a limited time (60 hours per week and 12 hours per day). In addition, the driver may use the license only for work, church or school, and the areas over which he/she may drive are also limited. Plaintiffs also note that the license will be denied a person who has had his/her license suspended within the last year. Defendants refute this argument, contending that it is the driver's own fault for receiving the prior suspensions. However, the prior suspensions may or may not have any relationship to drunk driving. If a person, such as plaintiff Raygo, is denied an occupational license because of a prior suspension, but the administrative suspension is vacated at either the judicial review stage or the trial of the underlying offense, that person is denied a protected property interest without any form of hardship relief and without due process of law. (Raygo's request for prompt judicial review was still pending as of May 31, 1988, the date of the amended complaint. His suspension took effect on March 26, 1988.)

Defendants also rely on the practice in some counties (notably Dane) to issue these occupational licenses on the same day as requested. I agree with plaintiffs that the relief afforded by the occupational license does not decrease the harm to plaintiffs sufficiently to be outweighed by the states interest.[5] The occupational licenses are too limited, and availability is too uncertain, to provide effective hardship relief.

■ Plaintiffs also contend that the suspension affects their reputational interests. In support of this position, plaintiffs submitted a statement from Michael P. Kelly, an insurance agent from American Family. He stated that once his company gets notice of the suspension, his firm automatically cancels the driver's insurance.[6] (The driver may be offered risk insurance.) Plaintiffs also point to the ignominy associated with suspension of the license prior to conviction. Defendants contend that the ultimate conviction is worse than the minor suspension. This may be true. But what of the harm, which the state cannot undue, suffered by those whose suspensions are ultimately vacated, either as a result of judicial review (*e.g.* Beth Andryk) or after acquittal of the underlying charge? Also, the suspension is for a substantial period of time—six months. In *Mackey*, the suspension was for 90 days. Other cases also had significantly shorter periods of suspension. *See Heddan*, 336 N.W.2d 54 (90 day suspension); *Henry*, 340 S.E.2d 720 (10 day suspension); *Gonzales*, 595 F.Supp. 382 (90 day suspension). Wisconsin has attempted to strengthen its drunk driving laws, but at the sole expense of its citizens, and without due process of law.

Defendants contend that the risk of erroneous deprivation is minimal because the intoxilizer is a machine with recognized reliability. They also contend that the training of the hearing examiners, the opportu-

---

**5.** Another matter which was discussed at some length at the July 1 hearing dealt with a problem under the law as originally enacted and which faced those drivers who held both regular and chauffeur drivers licenses. Two plaintiffs, Mr. and Mrs. Hanke fall within this category. Prior to May 17, 1988, the effective date of 1987 Wis.Act 399 § 443b all driving privileges were suspended administratively after failing a test. In Mr. Hanke's case, he was stopped while driving on his regular license. His chauffeur's license was also suspended. Pursuant to a plea agreement, Mr. Hanke pled guilty to the underlying charge on May 3, 1988. He asked the judge to rescind the administrative suspension to avoid losing his chauffeur's license. The judge refused and suspended driving privileges for seven months. As a result of not vacating the administrative suspension, Mr. Hanke had

to wait 15 days before he was eligible for a limited chauffeur's license and was unable to work during that time. 1987 Act 399 (which created Wis.Stat. § 343.305(8)(e)) remedies this problem, although not for the Hanke's.

**6.** Defendants find it odd that plaintiffs should complain about unsworn statements at the administrative hearing stage and then attempt to use the same material before this court. It is true that Mr. Kelly's statement was not a sworn affidavit. However, much of the materials submitted have not been in a form usually necessary for admission at trial. The case is before the court to determine plaintiffs likelihood of success, not to try the issues to final judgment. All testimony and documents submitted have been considered.

nity for the driver to present his side of the story, and the availability of prompt judicial review decrease the risk of an erroneous deprivation. Finally, defendants contend that plaintiffs success in getting some suspensions vacated proves the lack of an erroneous deprivation. These arguments, while appealing, do not assist defendants' position. The intoxilizer may be a reliable instrument, but its reliability becomes suspect absent the opportunity for the driver to challenge the manner in which it was operated. The training of the examiners is not in question.[7] The driver's opportunity to present his/her story is extremely misleading if the examiner is to accept the account of the police report as the true statement of events. And the availability of prompt judicial review is almost non-existent as the statute is presently enforced, except in some counties. Finally, the success in vacating suspensions highlights the risk of erroneous deprivation. Those cases where the suspension was vacated for lack of a record highlight the informal manner in which this statute is applied. No evidence of the ultimate number of judicial vacations has been provided to assist the state.

The final aspect of the *Mackey* test is the states interest—one aspect which weighs most heavily in favor of the state. The state has an obvious interest in decreasing drunk driving and the accidents associated with it. It also has an interest in keeping the costs of enforcing the drunk driving laws to a minimum. These interests have been recognized by the courts in *Mackey, Heddan, Carson,* and *Edmisten.* However, the testimony of state's witnesses, together with the statutes and regulations tip the balance on this issue in favor of plaintiffs.

Mr. Hancock testified that the increased cost of better procedural safeguards, such as sworn affidavits, clearer wording of the statute to alleviate improper application, and possibly providing immunity for driver testimony at the administrative hearing, would be of little cost to the state. The only required action would be further refinement of the statute and the regulation by way of amendment. The increased cost associated with compelling the arresting officer or intoxilizer operator to be present at the hearing could be substantial, although cost figures were not presented. I do not believe that compelling the officer's presence, absent a subpoena by the driver, is necessary. This would be especially true if the post-suspension judicial review was held at a meaningful time, which, although implied by the phrase "as expeditiously as possible", is not, as previously noted, presently being accomplished under the statute. In *Heddan,* the statute required that the hearing be held no later than sixty days following the suspension. In *Mackey,* the review was typically accomplished within seven days of the suspension. Such is neither a requirement of the Wisconsin statute, nor the current practice.

In *Mackey,* the Supreme Court recognized the states interest in summary suspension of a license when the driver refused to take a test.

> The Commonwealths interest in public safety is substantially served in several ways by the summary suspension of the those who refuse to take a breath-analysis test upon arrest. First, the very existence of the summary sanction of the statute serves as a deterrent to drunk driving. Second, it provides strong inducement to take the breath-analysis test and thus effectuates the Commonwealth's interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing such drivers from the road, the summary sanction of the statute contributes to the safety of the highways.

443 U.S. at 18, 99 S.Ct. at 2621. It must be remembered that under Wisconsin's statute, those who refuse to take the test can procure an automatic stay of their revoca-

---

7. At the preliminary injunction hearing, plaintiffs did attempt to challenge the independence of the examiner from the department. I stated then, and do so again, that this argument is without merit. The examiners, although trained by department personnel, do have free rein in the hearings. The regulation specifically provides that suspension decisions will not be used against the examiner. Mr. Konen testified that he was aware of this regulation.

tion by simply requesting judicial review of the revocation. Wis.Stat. § 343.305(10). This has the effect of encouraging drivers who wish to keep driving to refuse the test, for they know they may delay the ultimate penalty for drunk driving. This does not effectuate the states strong interest in obtaining reliable and relevant evidence. An automatic stay of the suspension may not be necessary under Wisconsin's statute. However, the language of the statute should be clear enough to ensure that circuit court judges do not feel bound by law to deny requests for stays, and clear enough that drivers faced with suspension are aware of their rights.

The first and third interests recognized by the Supreme Court in *Mackey* are both present under Wisconsin's statute. These, however, do not outweigh the private interests involved in this case, particularly since the defects in the statute as presently applied can be remedied so inexpensively. The state's valid interests must be accomplished within the bounds of the constitution. The state may still suspend the license of one arrested for drunk driving, if that person is provided a meaningful hearing at a meaningful time. The issue of whether that driver gets that hearing ought not be dependant on the county in which the citation was issued.

### III. CLASS CERTIFICATION

■ Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23 was filed in conjunction with their amended complaint. At the time the preliminary injunction hearing was held on July 1, 1988, the state had not yet responded to that motion. By letter dated July 12, 1988 defense counsel represented that defendants had no objection to this action proceeding as a class action suit pursuant to either Fed.R.Civ.P. 23(b)(2) or (3). Accordingly, plaintiffs' motion will be granted.

Plaintiffs have brought this action representing all persons of the state of Wisconsin who have been or will be arrested for operating a motor vehicle while under the influence of an intoxicant in violation of Wis.Stat. § 346.63(1)(a) or arrested for op-

erating a motor vehicle with a blood alcohol level over .10% in violation of 346.63(1)(b) and who have given a breath, blood or urine sample which was tested for the presence of alcohol and whose results are greater than 0.1% by weight of alcohol and are therefore subject to administrative suspension of their driving privileges pursuant to Wis.Stat. § 343.305 and Wis.Admin.Code chap. Trans. 113. Such a definition of the class is too broad however, for it includes some who are not similarly situated vis-a-vis the named plaintiffs.

Each of the named plaintiffs have challenged the administrative suspension by requesting both an administrative hearing and judicial review of that proceeding. As stated above, of the over 9000 notices of intent to suspend which were issued in the first six months of 1988, only 1262 involved requests for review of that suspension. Of the 1262 who requested review, 208 were either no shows or the review was canceled, resulting in no challenge to the suspension. The class should be narrowly defined to exclude those persons who in effect have waived their right to challenge this statute by foregoing the right to an administrative hearing.

This action may be maintained as a class action on behalf of all those residents of Wisconsin who have been or will be arrested for a violation of Wis.Stat. § 346.63(1)(a) or (b), or a local ordinance in conformity therewith, and who are or will be subject to administrative suspension of their drivers license pursuant to Wis.Stat. 343.305 by virtue of their submitting to a breath, blood or urine test, the results of which were, are or will be above 0.1% BAC, and who have requested or will request an administrative review of that suspension.

This definition of the class is subject to further modification by this court. The burden of notifying class members will be on the plaintiffs. However, the defendants will have an integral role in this process since they maintain the records containing the identity of those drivers who have been subject to the procedures of the statute.

## IV. CONCLUSION

From the foregoing discussion, it is apparent that the hearing provided by the statute does not provide a meaningful hearing at a meaningful time, and violates both the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The hearing does not, however, violate any of plaintiffs rights as guaranteed by the fifth amendment for they are not compelled to give testimony at the administrative hearing. The statute fails to satisfy the requirements of the U.S. Constitution at the hearing stage of the suspension procedure.

The constitutional deficiency in the statute at the hearing stage would not entitle plaintiffs to the relief sought if the statute provided judicial review of those administrative proceedings in a manner which meets the requirements of both due process and equal protection of the laws. On its face, the statue does provide a mechanism whereby this could be accomplished. However, as interpreted by the department's regulation, and as applied by the different judicial circuits within Wisconsin, the statute fails to safeguard plaintiffs' constitutional rights. Judicial review is often not provided at a meaningful time, and often the review is less than a meaningful hearing. Therefore, the statute as applied, violates plaintiffs due process rights. As applied, the statute also violates the equal protection clause of the constitution for it creates different classes of plaintiffs who are not treated equally. These classifications bear no rational relationship to the statute. In fact, the classes are defined solely on the basis of geography, which bear no relationship to the purpose of the statute. Drivers will be treated differently, depending on where the violation occurs. In some, the driver will get a *de novo* review of the administrative hearing at a meaningful time. In others, it is doubtful the driver will get any type of hearing which will serve to remedy an otherwise erroneous suspension of the license. In still others, the administrative review, which itself does not protect an individual plaintiff's rights, will be in essence rubber stamped by the court.

For these reasons, the statute, as it is presently being applied and enforced in this state, cannot be upheld.

Defendants' motion to dismiss will denied because I find abstention to be inappropriate in this case and because plaintiffs have stated a claim upon which relief can be granted. Plaintiffs' motion for a preliminary injunction will be granted for they have shown a reasonable likelihood of success on the merits of this case, and the harm to plaintiffs in denying the request for the injunction outweighs the harm to defendants in granting it. The public interest would be best served by granting the injunction because the state can still enforce the statute, but only in accord with this opinion. Finally, plaintiffs' motion for class certification will be granted, based on defendants having no objection.

## V. ORDER

Accordingly,

IT IS ORDERED that defendants' motion to dismiss the complaint be and the same is hereby DENIED, and

IT IS FURTHER ORDERED that plaintiffs motion for class certification pursuant to Fed.R.Civ.P. 23(b)(2) and (3) be and the same is GRANTED in accordance with this opinion, and

IT IS FURTHER ORDERED that plaintiffs motion for a preliminary injunction be and same is hereby GRANTED. Those plaintiffs who have suffered from the application of this statute can apply to the department for vacation of the the suspensions previously imposed in violation of the constitution. If a particular plaintiff has already been convicted of the underlying offense, such relief need not be afforded. Defendants are hereby enjoined from further enforcement of the statute in a manner which conflicts with this opinion, and

IT IS FURTHER ORDERED that if the defendants do not appeal this decision, and the court does not receive within sixty days from the date of this order a request in writing from either party for a trial on the merits, the preliminary injunction issued

today shall become permanent, and judgment will be entered in plaintiffs favor and against the defendants without further notice from the court.