884 F.2d 990
 Steven C. THOMAS, et al., Plaintiffs-Appellees,
v.
Ronald FIEDLER, Secretary of the Wisconsin Department of
Transportation, and Joseph Sweda, Wisconsin
Commissioner of Transportation,
Defendants-Appellants.
 No. 88-3453.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 1, 1989.
Decided Sept. 6, 1989.
 
 William A. Pangman, Joseph Owens, Patricia A. Schober, Timothy J. O'Brien, Pangman & Associates, Waukesha, Wis., for plaintiffs-appellees.
 Charles D. Hoornstra, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellants.
 Before BAUER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 Society has come to recognize the hard way that drivers who operate a motor vehicle while impaired by alcohol or drugs pose a serious threat to the health and safety of a state's citizenry. Wisconsin has sought to respond to this problem, in part, by implementing procedures for administratively suspending the driver's license of any individual whose blood alcohol test results reveal that he or she was driving while impaired. In the present case, a class of plaintiffs aggrieved by the State's suspension procedures have successfully sued in federal court for an injunction prohibiting enforcement of the administrative scheme. The district court found that portions of Wisconsin's Act and interpretive regulations were unconstitutional, both on their face and as applied. Thomas v. Fiedler, 700 F.Supp. 1527 (E.D.Wis.1988). This is the State's appeal from the district court's injunctive order. In their initial set of briefs, defendants-appellants argued that the district court should have abstained from hearing a constitutional challenge to the State's ongoing administrative and judicial proceedings under the Act. Alternatively, they argued that the district court erred in concluding that the Act and regulations violated the due process and equal protection interests of the plaintiffs. In the interim between the filing of those briefs and oral argument before this court, the Wisconsin Legislature responded to the district court's injunctive order by amending the provisions of the Act which the district court found unconstitutional. Because we are bound to apply the law as it exists at the time of an appeal, the threshold question before us is whether the merits of appellant's claims have been mooted by the State's amendments to the Act. We believe that they have been.
 
 I. Background
 
 2
 On February 17, 1987, the State of Wisconsin substantially amended its drunk-driving laws through the passage of the Act at issue in this appeal. 1987 Wis. Act 3, codified at Wis.Stats. Sec. 343.305 ("Act"). As an adjunct to the State's implied consent law, the 1987 Act incorporated and amended portions of Wisconsin's prior law, effective January 1, 1988.[1] The most significant change wrought by the 1987 Act was the addition of an administrative procedure for suspending the driver's license of anyone who tests positively for driving while impaired. Regulations promulgated by the Wisconsin Department of Transportation provided an interpretation of the Act and additional procedural guidelines. Wis.Admin.Code Ch. Trans 113 ("Regulations").
 
 
 3
 The administrative suspension provisions of the Act and Regulations pertinent to this case provided that when a driver's test results reflected a blood alcohol content ("BAC") of 0.1% or higher, the arresting officer shall forward the results of the test to the Department, take possession of the individual's driver's license, and provide the individual with notice that in 30 days, his or her operating privileges would be suspended for a period of six months. The notice of suspension form doubled as a 30-day temporary license and also informed the individual of his or her right to administrative review of the suspension. An individual seeking to avail himself or herself of such review was required to request a hearing within 10 days of receiving the notice. The Department, in turn, was required to hold the hearing within 30 days of the date of the notice.
 
 
 4
 At the pre-deprivation hearing provided, an individual was allowed to present evidence and could be represented by counsel; however, the Act provided that the arresting officer need not appear at the hearing. The Regulations went further to add that the arresting officer could not be subpoenaed to appear at the hearing. The hearing itself was explicitly limited to six issues: whether the individual (1) was correctly identified as the driver, (2) was informed of his or her options regarding the tests, (3) had a BAC of 0.1% or more, (4) was given one or more properly administered tests, and whether (5) one or more of the tests indicated that the person had a BAC of 0.1% or more, and (6) the officer had probable cause for the underlying arrest. The answers to these questions were to be gleaned from a copy of the officer's unsworn report and the results of the chemical tests conducted, both of which had to be before the hearing officer. If the record before the hearing officer showed that each of the six issues was proved, the suspension would go into effect on the 31st day after the date of the notice of suspension.
 
 
 5
 A driver who was dissatisfied with the results of the pre-deprivation hearing could petition for judicial review of the proceeding by the court presiding over the case on the underlying drunk driving violation, or by a court commissioner. If the driver sought "prompt judicial review," the court or commissioner was directed to "conduct the review as expeditiously as possible to minimize the impact upon the individual of any delay." Yet the Act provided that a petition for judicial review would not stay the suspension. Moreover, judicial review of the hearing was explicitly limited by the Act to the six issues specified. The Regulations, on the other hand, noted that the court was to conduct a de novo review of the issues raised in the driver's petition. In all events, a suspension decision was to be affirmed upon a finding that there was "clear, satisfactory and convincing evidence to satisfy each of the" six issues enumerated by the Act.
 
 
 6
 The plaintiffs in this case are individuals who tested positively for a BAC of 0.1% or better after the effective date of the Act, and thus received notice of administrative suspension. On May 22, 1988, they filed a complaint in the district court under 42 U.S.C. Sec. 1983, alleging that the Act violated their rights to due process and equal protection. They sought a declaratory judgment that the Act was unconstitutional and an injunction to prohibit its enforcement. Plaintiffs also moved to have their case certified as a class action pursuant to Fed.R.Civ.P. 23. Defendants responded by moving to dismiss. After conducting a hearing on the motions, the district court rendered a decision on December 6, 1988, in which it denied defendant's motion to dismiss, granted the plaintiffs' motion for a preliminary injunction, and their motion for class certification. The district court defined the class as
 
 
 7
 all those residents of Wisconsin who have been or will be arrested for a violation of Wis.Stat. Sec. 346.63(1)(a) or (b), or a local ordinance in conformity therewith, and who are or will be subject to administrative suspension of their drivers licenses pursuant to Wis.Stat. 343.305 by virtue of their submitting to a breath, blood or urine test, the results of which are or will be above 0.1% BAC, and who have requested or will request an administrative review of that suspension.
 
 
 8
 Thomas, 700 F.Supp. at 1542.
 
 
 9
 In the decision granting injunctive relief, the district court began by rejecting the defendants' contention that Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny required the court to abstain from hearing the suit to enjoin enforcement of Wisconsin's civil suspension proceedings. Thomas, 700 F.Supp. at 1534-35. The district court noted that the Younger doctrine might well extend to the State's administrative proceedings in this context. See Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). Nevertheless, it held that this case was characterized by "extraordinary circumstances" which rendered abstention inapplicable to the extent that the Act denied the plaintiffs "a full and fair opportunity to litigate" their constitutional objections to the administrative suspension procedures. Thomas, 700 F.Supp. at 1535 (citing Ohio Civil Rights Commission, 477 U.S. at 627, 106 S.Ct. at 2722). Affidavits before the court revealed that because the Act explicitly limited the scope of the administrative hearing and subsequent judicial review to the six issues enumerated, many courts reviewing the suspension determination refused to hear any constitutional challenges to the Act. Although the defendants were able to show that one state court did review the constitutionality of the Act, the driver in that case was not able to obtain review of the actual suspension decision until four months after filing his petition for judicial review. Thomas, 700 F.Supp. at 1536. The court concluded that on balance, these facts regarding the application of the Act placed the case within the "exceptional circumstances" exception to the Younger doctrine.
 
 
 10
 Having rejected the abstention arguments, the district court proceeded to the merits of the plaintiffs' complaint. Relying upon Mackey, the court reaffirmed that the plaintiffs have a protected property interest in their driver's licenses. Mackey v. Montrym, 443 U.S. 1, 11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979) (citing Dixon v. Love, 431 U.S. 105, 112-13, 97 S.Ct. 1723, 1727-28, 52 L.Ed.2d 172 (1977)). The district court then drew upon the balancing test in Mackey for determining "what process is due to protect against an erroneous deprivation of that [property] interest." Thomas, 700 F.Supp. at 1537 (quoting Mackey, 443 U.S. at 10, 99 S.Ct. at 2617.)[2] Although the court recognized that Wisconsin had an "obvious interest" in ridding its streets of drunk drivers through an efficient and inexpensive procedure, the court held that the Act did not adequately protect against the possibility that plaintiffs might be erroneously deprived of their licenses. To begin with, the court found that the pre-deprivational hearing provided by the Act was not meaningful. Thomas, 700 F.Supp. at 1538-39. For example, although the Act granted the driver the right to present evidence at the hearing, he or she was precluded from subpoenaing the arresting officer and thus had no effective means for enforcing this right. Additionally, testimony before the court showed that regardless of the evidence presented by the driver, the hearing officers would accept the unsworn report of the arresting officer as being true if the evidence sufficiently supported the six issues enumerated in the Act. The court concluded that these shortcomings in the pre-deprivation hearing were insufficient to render the Act unconstitutional if Wisconsin provided prompt post-deprivation review of the decision. Id. at 1541 (citing Ohio Civil Rights Commission, 477 U.S. at 629, 106 S.Ct. at 2723).
 
 
 11
 Turning to the post-deprivation review provisions, the district court found that the judicial review provided was neither meaningful nor timely. As noted earlier, the Act explicitly limited judicial review to the six issues enumerated. Moreover, although the Act contemplated "prompt" judicial review of the suspension determination, many of the cases of record revealed that requests for review were sometimes not acted upon until three to four months after the suspension went into effect. Thus the court held that the Act did not provide an adequate or prompt post-deprivation hearing. Id. at 1538-39. The court concluded that in tandem, the pre-deprivation and post-deprivation review provisions of the Act did not adequately protect against the possible erroneous deprivations of the plaintiffs' driver's licenses. Because testimony before the court revealed that many of these shortcomings could be remedied through certain procedural safeguards with minimal costs to the State, the court held that the Act violated the plaintiffs' right to due process. Id. at 1541.
 
 
 12
 Finally, the court found that because the judicial review provisions of the Act were ambiguous, the state courts were interpreting and applying the Act differently based on the geographical area in which the driver lived or in which the citation was issued. The court concluded that the differing standards of judicial review employed by the courts reviewing the administrative hearings created classifications of individuals with no rational relationship to the purpose of the statute. Id. at 1539. For this reason, the court held that as applied, the Act violated the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.[3]
 
 
 13
 Based upon its conclusion that the Act violated the plaintiffs' rights to due process and equal protection, the court enjoined the defendants from enforcing the statute in a manner inconsistent with its decision. The court also ordered the Department to vacate the administrative suspensions for all the plaintiffs who had not yet been convicted of the underlying drunk driving charge. Defendants appealed. Concurrently, the Department of Transportation responded to the district court's order by placing a moratorium on issuing administrative suspensions under the Act, and by returning the licenses of any driver who had been issued a Notice of Intent to Suspend. The State then enacted emergency rules, effective December 31, 1988, in an effort to comply with the injunctive order. Based on these rules, the defendants sought a stay of the injunction. Plaintiffs, on the other hand, believed that the emergency rules did not comply with the court's injunction and moved for an order of contempt. The court denied the defendant's motion for a stay, and on March 28, 1989, before the district court could rule on the plaintiffs' motion for a contempt order, the State formally amended the Act by enacting 1989 Wisconsin Act 7 ("Act 7").
 
 
 14
 Act 7, effective April 5, 1989, amended portions of the prior law which the district court found objectionable. In response to the court's conclusion that the pre-deprivation hearing under the previous Act was not meaningful, Act 7 provides that an arresting officer may be subpoenaed to appear at the administrative hearing. Wis.Stat. Sec. 343.305(8)(b)(1). Additional provisions provide that the hearing officer is to consider and determine the reliability of all the evidence presented at the hearing. Moreover, the statements and reports of the arresting officer are to be weighed according to the "same standards of credibility applied to all other evidence." Wis.Stat. Sec. 343.305(8)(b)(4). Act 7 also prohibits the use of any witness' hearing testimony "in any subsequent action or proceeding." Wis.Stat. Sec. 343.305(8)(b)(3).
 
 
 15
 With regard to the judicial review provisions of the prior law, Act 7 requires the hearing officer to notify the individual of both his or her right to judicial review and the reviewing court's authority to issue a stay of the suspension pending judicial review. Wis.Stat. Sec. 343.305(8)(b)(3). Additionally, Act 7 repealed the provision of the prior law which limited judicial review to the six issues of inquiry at the hearing. Wis.Stat. Sec. 343.305(8)(c)(1).[4] Finally, with reference to the timeliness of the post-deprivation review, Act 7 provides:
 
 
 16
 The Department shall vacate the administrative suspension under sub. (7) unless within 60 days of the date of the request for judicial review of the administrative hearing decision the department has been notified of the result of the judicial review or of an order of the court entering a stay of the hearing examiner's order continuing the suspension.
 
 
 17
 Wis.Stat. Sec. 343.305(8)(c)(2).
 
 II. Analysis
 
 18
 Because Act 7 was effective as of April 5, 1989, we are bound to apply it on appeal. Kremens v. Bartley, 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977). We find that Act 7 exceeds the minimal changes which the district court suggested would redeem Wisconsin's administrative suspension scheme. The district court explicitly stated in its decision that "[t]he only required action would be further refinement of the statute and the regulation by way of amendment.... I do not believe that compelling the officer's presence [at the hearing], absent a subpoena by the driver, is necessary. This would be especially true if the post-suspension judicial review was held at a meaningful time ... [a post-deprivation hearing] no later than sixty days following the suspension [is not] a requirement of the Wisconsin statute, nor the current practice." Thomas, 700 F.Supp. at 1541. Since each of these "refinements" was made by Act 7, this appeal was rendered moot. Benkendorf v. Village of Hazel Crest, 804 F.2d 99, 101 (7th Cir.1986) (citing Kremens, 431 U.S. at 129, 97 S.Ct. at 1715). As noted in Wright & Miller's treatise on Federal Practice:
 
 
 19
 Even short of outright appeal, amendment of challenged legislative rules may moot an attack by satisfying the claims raised by the attack. Many cases have found that amendment of challenged statutes has in fact mooted an attack; mootness even may be achieved by an amendment that responds to a lower court decision, so long as the amendment seems an enduring good-faith act.
 
 
 20
 13A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3533.6 (1984) (collecting cases).
 
 
 21
 The plaintiffs seek to forestall our conclusion about the mootness of this appeal by suggesting that Wisconsin acted with bad-faith in passing Act 7. Plaintiffs argue that if we were to vacate the district court's injunction, the State would be free to reenact the prior law or portions thereof with total impunity. They also suggest that there has been "an element of constitutional 'cat and mouse' in the series of enactments" by the State. Plaintiffs' Brief In Response To Defendants' Suggestion of Mootness at 4-5. Yet plaintiffs offer no support for this characterization of the Legislature's actions. Nor can we glean any from the record. On the contrary, the record suggests that Act 7 represents a good-faith attempt on the part of the State to preserve its administrative suspension procedures in a manner that comports with the district court's decision regarding the due process rights of the State's citizens. We have no grounds for suspecting that the State would attempt to reenact the prior law. Compare City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 n. 11, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982) (appeal not mooted by repeal of objectionable portions of ordinance where City announced its intention to reenact provisions). In short, the plaintiffs have succeeded in causing Wisconsin to alter its suspension scheme to comply with the district court's order of judgment. The fact the State has complied with a new law means that there is no "case or controversy" currently before this court.
 
 
 22
 Plaintiffs also try to distinguish this case from Kremens by relying on Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975), to argue that the class, certified by the district court before the state enacted Act 7, has acquired a legal status apart from the named plaintiffs which keeps this case "alive." See also United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Again, we must disagree. In Sosna, the Court found that the durational residency requirement at issue in that case, although inapplicable to the named plaintiff because she had met the requirement by the time the case arrived on appeal, was capable of repetition relative to the other members of the class and would evade review under the "inexorable passage of time." Kremens, 431 U.S. at 131, 97 S.Ct. at 1716 (interpreting and distinguishing Sosna ). In the present case, each of the named plaintiffs and the class members has had his or her suspension vacated by the district court's order as long as they had not already been convicted of the underlying charge of drunk driving. Moreover, the class will not gain any new members because the Department of Transportation entered a moratorium against enforcement of the prior suspension procedure as of the date of the district court's injunction. Finally, the amendments to the Act wrought by Act 7 have already gone into effect. To the extent that the potential class represented in this action is now extinct[5] rather than merely "fragmented," this appeal presents an even more compelling circumstance for a finding of mootness than did the facts in Kremens.
 
 
 23
 Accordingly, this appeal is dismissed as moot. We remand the matter to the district court with directions to vacate the judgment and dismiss the plaintiffs' complaint without prejudice.
 
 
 
 [1]
 Wisconsin's Vehicle Code prohibits the operation of a motor vehicle while under the influence of an intoxicant or controlled substance. Wis.Stat. Sec. 346.63. Under the State's implied consent law, any person who drives on the State's public highways is deemed to have consented to the administration of a blood alcohol test upon the request of an officer. Wis.Stat. Sec. 343.305(2). Prior to the passage of 1987 Wisconsin Act 3, the State's license suspension and revocation scheme created an incentive for unlawfully refusing to submit to such testing. See 1985 Wisconsin Act 337. One of the central purposes of Wisconsin Act 3 was to address this shortcoming in Act 337 and thus strengthen the deterrent value of the State's prohibition against driving while impaired
 
 
 [2]
 The Mathews/Mackey balancing test seeks to weigh the following factors:
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved in the fiscal and administrative burdens that the additional or substitute requirement would entail.
 Mackey, 433 U.S. at 10, 99 S.Ct. at 2617 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).
 
 
 [3]
 The district court provided no precedential support for this seemingly novel holding under the Equal Protection Clause of the Fourteenth Amendment. Although we express no view as to the merits of the district court's holding, we would expect that an alternative ground for finding the Act unconstitutional would be more firmly grounded by some form of binding authority
 
 
 [4]
 Although we express no opinion whatsoever about the merits of any future challenges to Wisconsin's present administrative suspension procedures, we do note that the foregoing amendments to the prior Act should bear directly upon the application of Younger abstention to any subsequent claims that might arise in this case. As the Supreme Court stated in Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987), a federal court "cannot presume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." It should go without saying that the state courts are bound by federal constitutional law under Article VI of the United States Constitution. The burden, therefore, is on the plaintiff to present "unambiguous authority" showing "that state procedural law barred presentation of [its] claim." Id. 481 U.S. at 14-15, 107 S.Ct. at 1527-28
 
 
 [5]
 On this score, it is instructive to note that the plaintiffs did not seek any damages in this action