COURT OF APPEALS
DECISION
DATED AND FILED

December 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP189-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CT866

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BENJAMIN G. CHURLEY,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Affirmed*.

¶1 NASHOLD, J.[1] Benjamin Churley appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration, in violation of WIS. STAT. § 346.63(1)(b), as a third offense. He argues that his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

constitutional right to a speedy trial was violated. I reject this argument and affirm the judgment of conviction.

## BACKGROUND

¶2 Churley was charged on November 2, 2017, with operating a motor vehicle while under the influence of an intoxicant and operating a motor vehicle with a prohibited alcohol concentration, both as third offenses. Pursuant to WIS. STAT. § 343.305(7)(a), his operating privilege was to be administratively suspended on November 30, 2017. Churley moved for a stay of his administrative suspension and filed a request for judicial review. The circuit court stayed the administrative suspension on December 1, 2017.

¶3 On January 9, 2018, Churley filed four pretrial motions challenging the admissibility of certain evidence. An additional motion requesting suppression of evidence was filed on January 22, 2018. An evidentiary hearing on Churley's motions was held on May 16, 2018. At the conclusion of the hearing, the circuit court denied one of Churley's motions. The court ordered supplemental briefs on the remaining issues, setting July 9, 2018, as the deadline by which briefing was to be completed. The parties submitted their respective briefs by the deadline, and Churley also filed an additional motion challenging the admissibility of evidence on July 9, 2018.

¶4 The circuit court took no further action on the parties' submissions until sometime in February 2019, when the court's judicial assistant sent an email to the parties, informing them of the court's request that they submit any supplemental authority they could locate, including from other jurisdictions, on an issue related to the officer's request for a preliminary breath test ("the PBT

issue").[2]  In response, Churley submitted a supplemental brief on March 19, 2019. The State neither filed a supplemental brief nor informed the court that it was unable to locate additional authority.  On January 22, 2020, the circuit court entered an order denying all of Churley's remaining motions.

¶5      On March 31, 2020, Churley filed a motion to dismiss the charges against him, alleging a violation of his constitutional right to a speedy trial. Among other things, Churley argued that his request for judicial review of the administrative suspension constituted a request for a speedy trial.

¶6      Following a hearing held on October 14, 2020, the circuit court denied Churley's motion, applying the four factors set forth in ***Barker v. Wingo***, 407 U.S. 514, 530 (1972):  the length of delay, the reason for delay, whether the defendant asserted his right to a speedy trial, and whether the defendant was prejudiced by the delay.

¶7      On November 23, 2021, Churley pleaded no contest to the charge of operating a motor vehicle with a prohibited alcohol concentration.[3]  A judgment of conviction was entered on January 20, 2022.

## DISCUSSION

¶8      Churley argues that the circuit court erred in denying his motion to dismiss the charges because he was denied his right to a speedy trial under the

---

[2]  The judicial assistant's email does not appear to be in the record.  This summary of the email is therefore taken from the parties' appellate briefs, Churley's motion to dismiss filed in the circuit court, and the parties' and circuit court's characterization of the email at the October 14, 2020 hearing on Churley's motion to dismiss.  The parties do not dispute the general content of the email.

[3]  The charge of operating a motor vehicle while under the influence was dismissed.

3

Sixth Amendment of the United States Constitution and Article I, section 7 of the Wisconsin Constitution.[4] "Whether a defendant has been denied [the] constitutional right to a speedy trial presents a question of law, which this court reviews de novo, while accepting any findings of fact made by the circuit court unless they are clearly erroneous." *State v. Urdahl*, 2005 WI App 191, ¶10, 286 Wis. 2d 476, 704 N.W.2d 324.

¶9    In determining whether a defendant's constitutional right to a speedy trial has been violated, our appellate courts use the four-part balancing test established in *Barker*, 407 U.S. at 530, which considers: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *See e.g.*, *Urdahl*, 2005 WI App 191, ¶11. This test applies under both the federal and state constitutions. *See id.*

¶10    The right to a speedy trial is not subject to bright-line determinations but must be considered based on the totality of circumstances. *Id.* The test "weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done expeditiously." *Id.* "The only remedy for a violation of the right to a speedy trial is dismissal of the charges." *Id.*

¶11    Before applying the *Barker* factors to the facts of this case, I briefly address an issue not raised by either party or addressed by the circuit court. As set forth above, Churley's judgment of conviction is the result of a no-contest plea rather than a trial. Thus, there may be a question as to whether, by pleading no contest, Churley has waived his right to raise a speedy trial claim on appeal. *State*

---

[4] Churley does not make an argument based on the speedy trial provisions of WIS. STAT. § 971.10. I therefore do not address that statute.

*v. Kelty*, 2006 WI 101, ¶18, 294 Wis. 2d 62, 716 N.W.2d 886 (Under the guilty-plea-waiver rule, "[t]he general rule is that a guilty, no contest, or *Alford*[5] plea 'waives all nonjurisdictional defects, including constitutional claims.'" (alteration to footnote; quoted source omitted)). Our supreme court has "applied this rule to hold that a guilty plea, properly made, will waive a defense based upon the right to a speedy trial." *Hatcher v. State*, 83 Wis. 2d 559, 563, 266 N.W.2d 320 (1978), citing *Foster v. State*, 70 Wis. 2d 12, 233 N.W.2d (1975); *see also* *State v. Allen*, No. 2002AP2856-CR, unpublished slip op. ¶¶6, 9 (WI App Apr. 2, 2003) (applying guilty-plea-waiver rule to defendant's speedy trial claim, noting that "the lack of a trial makes it difficult, if not impossible, for us to conduct a meaningful evaluation of [defendant's] claim of prejudice," a factor under the *Barker* test that is "critical to a determination of whether a defendant's constitutional rights have been violated").

¶12     Nevertheless, because the State does not advance an argument based on the guilty-plea-waiver rule, I address Churley's speedy trial claim applying the *Barker* test, while acknowledging that Churley's no-contest plea "foreclose[s] a full probe of th[e] [prejudice] factor." *Allen*, No. 2002AP2856-CR, ¶9.

**Length of Delay**

¶13     The first *Barker* factor, the length of delay, is a "triggering mechanism used to determine whether the delay is presumptively prejudicial." *Urdahl*, 286 Wis. 2d 476, ¶12. A delay is considered presumptively prejudicial when it "approach[es] one year." *Id.* "It is only necessary to inquire into the other *Barker* factors when a delay is presumptively prejudicial." *State v. Provost*, 2020

---

[5] *See* ***North Carolina v. Alford***, 400 U.S. 25 (1970).

WI App 21, ¶27, 392 Wis. 2d 262, 944 N.W.2d 23.  Here, the circuit court found, and the parties agree, that as of the October 2020 hearing, the case had been pending for approximately thirty-five months, with charges having been filed in November 2017.[6]  Because this delay is presumptively prejudicial, I consider the remaining ***Barker*** factors.

**Reasons for Delay**

¶14    In analyzing the second ***Barker*** factor, the reason for the delay, this court "identifies the reason for each particular portion of the delay" and then "accord[s] different treatment to each category of reasons."  ***Urdahl***, 286 Wis. 2d 476, ¶26.  Here, the circuit court made findings with respect to some of the periods of delay and Churley does not argue that these findings are clearly erroneous.

¶15    The circuit court determined that of the thirty-five month delay, nine months were caused by the prosecutor's office.  The nine-month time period consisted of the time during which the prosecutor failed to respond to the court's request for supplemental authority on the PBT issue (presumably, from the April 1, 2019 deadline for the parties' supplemental submissions to the court's January 22, 2020 denial of all of Churley's remaining evidentiary motions).  The

---

[6] Both the circuit court and the parties assume that, in analyzing whether Churley was denied his right to a speedy trial, the pertinent time period is from the November 2017 charges to the October 2020 hearing on Churley's motion to dismiss.  I question the end-point of this agreed-to time period.  It appears that under ***Barker v. Wingo***, 407 U.S. 514 (1972), and other case law cited in this opinion, a speedy trial challenge necessarily refers to the length of time before a *trial* is held or scheduled.  As previously noted, here, there was no trial held due to Churley's no-contest plea.  Although the circuit court's June 30, 2021 scheduling order shows that a three-day jury trial was scheduled to commence on November 29, 2021, as the State points out, and as Churley does not dispute, records from CCAP (Wisconsin's Consolidated Court Automation Programs) show that on July 1, 2021, Churley requested a setover of the trial, and he subsequently entered a plea of no contest on November 23, 2021.  However, given the parties' agreement and the circuit court's finding on the length of delay, I assume without deciding that the pertinent time period is the approximately thirty-five months between the November 2017 charges and the October 2020 hearing.

court noted that it only "get[s] the case once the briefs are in" and that, because the prosecutor did not file a brief or a notification that a brief would not be filed, the case was delayed by nine months, becoming active again only when the court realized that the case was still pending. The court stated that the delay was the result of a "mistake" by the prosecutor, who was "usually very punctual and very thorough in responding to the [c]ourt," and that the prosecutor's response evidently "slipped through the cracks."

¶16 The circuit court further noted that at no time during that nine-month period did defense counsel inquire about the status of the case or attempt to move it forward. The court stated that although it was the State's responsibility—and not defense counsel's—to file a brief or otherwise notify the court regarding the PBT issue, it "would be disingenuous to lay in the weeds and hope for as lengthy a delay as possible so that a motion like this can be brought when something could have been done to alert everyone of this problem."

¶17 With respect to other portions of the thirty-five month delay, the court observed that since March 2020, because of the COVID-19 pandemic, the circuit courts in Dane County were prohibited from holding jury trials, which was still true as of the time of the October 2020 hearing. As a result, even if the court and parties wished to have had a jury trial, they were unable to do so. The court further stated that defendants are often not interested in resolving their cases quickly and the State does not give misdemeanor cases the priority it gives serious felony cases. The court noted that throughout this time period, the defense could have waived a jury trial and instead had a court trial in a matter of three weeks, if it had wished to do so.

7

¶18    When asked by defense counsel about the time period from July 2018—when the parties' first round of briefing was completed—to the February 2019 email from the circuit court's judicial assistant requesting further information from the parties on the PBT issue, the judge explained that she was dealing with a serious medical issue during that time and that as a result, she "was not as efficient as [she] could have been." The court noted that, in any event, it had determined it would not be deciding the issues based on the original briefs but instead would have the parties provide the court with additional authority.

¶19    Other periods of delay were discussed by the prosecutor at the hearing. The prosecutor noted that Churley had requested three setovers of pretrial hearings that had been scheduled for between November 29, 2017, and January 2018. The request for a setover of the final prehearing scheduled for January 2018 was based on motions that Churley intended to file, and Churley subsequently filed five motions. A hearing on the motions was scheduled for March 2018, but at the State's request, the hearing was rescheduled to a few months later, to May 2018. Following the hearing, both Churley and the State filed briefs, and the circuit court's judicial assistant subsequently sent the February 2019 email discussed above, requesting additional authority on the PBT issue.

¶20    Regarding the State's failure to submit supplemental authority on the PBT issue during the subsequent nine-month period, the prosecutor stated that he believed he had addressed that issue in his prior brief, and that he could find no related Wisconsin authority. The prosecutor stated that he interpreted the circuit court's question as essentially "giving the defense another chance to provide any kind of case precedent which may be out there, in state or out of state." The

prosecutor apologized to the court, acknowledging that "it would have been more professional" to file a response stating that he would rely on his earlier brief.

¶21    The prosecutor also noted that in response to an email from the circuit court's clerk in January 2020 asking the parties for the soonest date they could schedule a trial, defense counsel responded that his schedule was so busy that he could not schedule any trial until well into summer. The prosecutor further stated that a final pretrial was set for March 2020 but defense counsel again requested a setover, asking for a hearing date in April or May 2020.

¶22    Counsel for Churley did not dispute the events as set forth by the prosecutor, but argued only that his initial requests for adjournments were made early in the case and did not involve a substantial amount of time. Counsel further noted it had been three years since charges were filed, that there were periods of time in which nothing had happened in the case, and that he had complied with all deadlines imposed by the circuit court. As to the State's failure to respond to the request from the court on the PBT issue, counsel emphasized that the court had asked both parties—not only defense counsel—to address the issue, and that the State had ignored the court's request.

¶23    Notably, Churley did not argue in the circuit court, nor does he argue on appeal, that the prosecutor deliberately attempted to delay the case in order to hamper the defense. Such intentional conduct would be weighted heavily against the State, whereas delays for other reasons are weighted less heavily or not counted:

> A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily. On the other hand, if the delay is caused by

something intrinsic to the case, such as witness unavailability, that time period is not counted. Finally, if the delay is caused by the defendant, it is not counted.

*Urdahl*, 286 Wis. 2d 476, ¶26 (citations omitted).

¶24 In addressing the reasons for the delay, Churley focuses primarily on the nine-month period during which the State did not respond to the circuit court's request regarding the PBT issue, a delay which the circuit found was unintentional.[7] That period also represents only part of the thirty-five month delay. Most of the remainder of the thirty-five month period was unexplained, caused by the defense, or caused by issues related to the circuit court. Other than the nine-month delay, the only other periods Churley discusses are those caused by the COVID-19 pandemic and the judge's serious medical condition. With regard to the former, Churley addresses this issue for the first time in his reply brief, asserting that "the pandemic is not a cure-all which excuses any length of delay," that the State does not explain "at what point the failure to accommodate the due process rights of the accused must yield to the convenience of the State," and that the "atypicality of this time in history does not warrant the suspension of constitutional rights." I do not consider these undeveloped assertions raised for the first time in Churley's reply brief. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped legal arguments will not be considered); *State v. Marquardt*, 2001 WI App 219, ¶14 n.3, 247 Wis. 2d 765, 635 N.W.2d 188 (arguments raised for first time in reply brief will not be considered). As to the judge's illness during the seven- to eight-month period

---

[7] Although Churley does not argue that the circuit court's finding on this point or any other point was clearly erroneous, he asserts that the State's action during the nine-month period was "deliberately dilatory at worst or, at best, inexcusably negligent." However, he offers no evidence of record or a developed argument in support of the conclusion that the prosecutor's failure to respond was "deliberately dilatory." I therefore do not consider this assertion.

between the completion of briefs and the judicial assistant's email requesting additional information on the PBT issue, Churley states that, if the illness interfered with the judge's work, the judge should have made arrangements for another judge to be assigned her cases. However, given that delays caused by "overcrowded courts" are counted but not weighted heavily against the State, *Urdahl*, 286 Wis. 2d 476, ¶26, the same is true for the seven- to eight-month period during which the circuit court was navigating a serious medical condition.

¶25 Based on the undisputed facts of record, I conclude the periods of delay that are attributable to either the prosecution or the circuit court do not count heavily against the State.

**Request for a Speedy Trial**

¶26 It is undisputed that Churley did not explicitly assert his right to a speedy trial at any time prior to filing his motion to dismiss. Instead, Churley argues that his November 2017 request for judicial review of the administrative suspension of his operating privilege constitutes a request for a speedy trial. The circuit court rejected this argument, stating that it was "simply wrong" and that "[o]ne [request] does not take the place of the other." The circuit court is correct.

¶27 Significantly, Churley cites no authority that supports his argument that a request for judicial review of an administrative suspension constitutes, or is in any way analogous to, a request for a speedy trial. Although a single event of drunk driving may result in both an administrative suspension and a criminal charge, the two are wholly separate proceedings, with different consequences at stake.

¶28 The authority Churley does rely on—***Thomas v. Fiedler***, 884 F.2d 990 (7th Cir. 1989), and WIS. STAT. § 343.305—is misplaced. Citing ***Fiedler***, Churley asserts:

> [B]ecause the review is required to be conducted 'as expeditiously as possible,' and furthermore, because WIS. STAT. § 343.305(8)(c)1. requires the review to be conducted *at the time of trial*, the joining of these two processes makes the filing of the judicial review request the functional equivalent of a demand for a speedy trial.

However, even assuming that this court were bound by the analysis in ***Fiedler***, that case does not address—or even mention—the constitutional right to a speedy trial. Moreover, as ***Fiedler*** itself makes clear, the requirement that judicial review be conducted "as expeditiously as possible" existed in a prior version of WIS. STAT. § 343.305(8)(c)1. (1987-88). ***Fiedler***, 884 F.2d at 991-95. The phrase "as expeditiously as possible" is no longer part of § 343.305. *See* 1989 Wis. Act 7, § 5; ***Fiedler***, 884 F.2d at 994-95. Instead, and as ***Fiedler*** also makes clear, the legislature amended the statute to address the issue identified by the plaintiffs in ***Fiedler***, namely, the continued deprivation of a suspect's license without sufficient due process. ***Fiedler***, 884 F.2d 993-95. Rather than allowing a license suspension to remain in effect while a circuit court schedules judicial review "as expeditiously as possible," as was permitted under the former statute, the legislature amended § 343.305 to ensure against the indefinite suspension of a license while judicial review is pending:

> The department [of transportation (DOT)] shall vacate the administrative suspension ... unless, within 60 days of the date of the request for judicial review of the administrative hearing decision, the [DOT] has been notified of the result of the judicial review or of an order of the court entering a stay of the hearing examiner's order continuing the suspension.

Sec. 343.305(8)(c)2.; *see Fiedler*, 884 F.2d at 994-95. This provision, currently in effect, was also in effect at the time of Churley's offense. Thus, to the extent Churley's argument relies on the premise that an administrative hearing must be held "as expeditiously as possible," his argument is without any basis.

¶29    Moreover, although Churley correctly notes that, pursuant to WIS. STAT. § 343.305(8)(c)1., "[t]he judicial review shall be conducted at the time of the trial of the underlying offense under [WIS. STAT. §] 346.63," *id.*, he incorrectly states that § 343.305(8)(c)2. "requires the Court to notify the Department of Transportation (DOT) of the result of the judicial review **within sixty (60) days of the filing of the request**." His argument continues:

> Clearly the marriage of the need to conduct judicial reviews as expeditiously as possible and notify the DOT of the result within sixty days with the statutory requirement that these reviews be conducted at the time of trial makes the filing of a judicial review request the functional equivalent of a speedy trial demand. In essence, to comply with the statutory provisions when a judicial review has been requested, the Court would need to conduct the trial for the underlying offense within sixty days.

This argument is predicated on at least two faulty assertions: (1) that § 343.305 requires a hearing to be held as "expeditiously as possible," which has already been discussed above; and (2) that the circuit court must notify the DOT of the result of the judicial review within sixty days of the filing of the request. With respect to the second premise, I note that there is no requirement that the court notify the DOT of the result of the judicial review within sixty days of the filing of the request. Instead, as set forth above, under § 343.305.(8)(c)2., if, within 60 days, the circuit court has not notified the DOT of the result of the judicial review or of an order of the court entering a stay of the administrative suspension, the

13

DOT "shall vacate the administrative suspension."[8] Thus, Churley likewise is incorrect in his conclusion that "to comply with the statutory provisions when a judicial review has been requested, the Court would need to conduct the trial of the underlying offense within sixty days."

¶30 In sum, Churley has failed to present any authority or persuasive argument that supports his position that a request for administrative review equates to an assertion of the right to a speedy trial. Accordingly, I reject this argument and conclude that Churley did not assert his right to a speedy trial.

¶31 Churley argues in the alternative that even if his judicial review request was not the functional equivalent of a speedy trial demand, this court may nonetheless conclude that he was denied his right to a speedy trial because, as stated in *Barker*, our federal constitution "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." *Barker*, 407 U.S. at 529. However, although the *Barker* Court "stated that a defendant has 'no duty to bring himself to trial' because that is the State's duty, the Court also stated: 'We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.'" *Urdahl*, 286 Wis. 2d 476, ¶33 (citations omitted). Thus, although Churley's failure to assert his right to a speedy trial is not fatal to his constitutional claim, it "weigh[s] heavily against his claim." *Id.*, ¶37.

---

[8] In fact, as stated above, Churley requested that the circuit court stay the administrative suspension and the court issued an order on December 1, 2017, staying the administrative suspension pursuant to WIS. STAT. § 343.305(8)(c)2.

**Prejudice**

¶32　"Courts consider the element of prejudice with reference to the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." *Id.*, ¶34. "The third interest is the most significant because 'the inability of a defendant [to] adequately … prepare his case skews the fairness of the entire system.'" *Id.*, quoting *Barker*, 407 U.S. at 532 (alterations in original).

¶33　In the instant case, Churley does not argue, nor does the record reflect, that he was incarcerated during the pendency of the criminal proceedings. Thus, the first interest is not implicated.

¶34　Regarding the second interest, Churley argues that he experienced anxiety in the form of financial and reputational harm or uncertainty as a result of the delay. He states that his employer informed him that it was taking a "wait-and-see" approach with respect to whether he could advance within the employer's company because there was uncertainty as to whether Churley would be incarcerated and whether he would be able to engage in the driving required for his job. He states that, as the general manager for an alcoholic beverage company, he was responsible for meeting directly with the Madison Police Department, the Alcohol License Review Committee and the City Attorney's Office. He states that "[e]very time [he] entered into a meeting with any of the foregoing, his anxiety about having a long-pending allegation against him of operating a motor vehicle while intoxicated caused him significant stress" and that he wondered whether his next meeting would begin with questioning about being charged with drunk driving. He states that "his stress was understandable as it had been made clear to

him that if his pending case interferes with his ability to perform his job, he will no longer be able to be retained as an employee of the business."

¶35     Preliminarily, I note that in making these assertions, Churley does not cite to any affidavit or testimony in the record and instead cites only to his brief in the circuit court. It is not surprising, therefore, that in analyzing Churley's similar assertions in circuit court, that court determined that there was "no evidence presented to [it] … of any prejudice whatsoever" and that there were only "conclusory statements made in [his] motion." I further note that in making these assertions, Churley attaches no time period or frequency to them, nor does he show that these concerns were caused by the *delay* in bringing the case to trial versus the nature of the charges themselves. Moreover, because the court stayed the administrative suspension of Churley's operating privileges, Churley was presumably able to drive for his job during the pendency of the criminal proceedings. Finally, it is not clear from the record, why, if the *pendency* of the criminal charges provoked such anxiety, Churley never sought to have the case resolved more expeditiously.

¶36     With respect to the most significant factor in the prejudice analysis—impairment of defense—as noted above, an analysis of this factor is hampered by the lack of a trial in this case due to Churley's no-contest plea. In any event, as explained below, the record does not show that the delay impaired his ability to present a defense to the charges.

¶37     Churley conclusively asserts that "witnesses' memories were adversely impacted" by the delay in this case. Specifically, without citing to the record, he states that there were "four passengers who were present when [he] was stopped," that "there were also other witnesses who were out with [him] on the

16

evening of his detention," and that "[n]one of these individuals will be able to recall the events of that night with the same clarity as they could have had not so much time passed in the lower court." Not only does Churley fail to support these assertions with any evidence of record, but he also fails to develop an argument as to how any of these alleged witnesses could have been helpful to his defense, particularly in light of his blood test that showed he had a prohibited alcohol concentration at the time he was driving. An appellate court need not consider arguments that are unsupported by adequate factual and legal citations or are otherwise undeveloped. *See Dieck v. Unified Sch. Dist.*, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990), *aff'd*, 165 Wis. 2d 458, 477 N.W.2d 613 (1991) (lack of record citations); *Pettit*, 171 Wis. 2d at 646-47 (undeveloped legal arguments and "[a]rguments unsupported by references to legal authority will not be considered"). Even considering Churley's arguments, however, his assertions are too speculative to weigh much, if at all, in favor of a determination that the delay prejudiced his ability to present a defense.[9]

**Balancing of the Factors**

¶38 In balancing all four factors of the *Barker* test, I conclude that Churley was not denied his right to a speedy trial. As set forth above, no part of the thirty-five months at issue is weighted heavily against the State. In contrast, weighing heavily against his claim of a speedy trial violation is Churley's failure

___

[9] In his reply, Churley appears to suggest that once a court presumes prejudice due to the length of the delay under *Barker*'s first factor, the court need not engage in a prejudice analysis under the fourth factor. Any argument to that effect is contradicted by case law. *See e.g.*, *State v. Provost*, 2020 WI App 21, ¶¶27, 46-50, 392 Wis. 2d 262, 944 N.W.2d 23 (although court deems delay of over thirty-four months was presumptively prejudicial, court analyzes and rejects defendant's arguments that he was prejudiced by the delay, attributing little or no weight to the interests he advanced); *State v. Urdahl*, 2005 WI App 191, ¶¶25, 34-36, 286 Wis. 2d 476, 704 N.W.2d 324 (although delay of over thirty and one-half months was presumptively prejudicial, the court analyzes, and declines to give much weight to, defendant's arguments as to prejudice).

to assert his right to a speedy trial during the approximately two and one-half years between issuance of the November 2, 2017 charges and his March 31, 2020 motion to dismiss. In addition, Churley's "requests for continuances 'significantly diminish the weight of [his] demand for a speedy trial.'" *Urdahl*, 286 Wis. 2d 476, ¶37 (alteration in original; quoted source omitted). Finally, as discussed above, Churley has shown minimal prejudice. Accordingly, the circuit court properly denied his motion to dismiss.

## CONCLUSION

¶39 For the reasons stated, I reject Churley's speedy trial arguments and affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.